# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **PRISCILLA A. ELLIS,** | |
| *Plaintiff*, | |
| **v.** | Civil Action No. 1:23-0632 (ACR) |
| **UNITED STATES OF AMERICA,**<br>SERVE:<br>Federal Tort Claims Act Section<br>Tort Branch, Civil Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530-0001 | |
| U.S. Attorney's Office<br>Civil Process Clerk<br>555 Fourth St. NW<br>Washington, DC 20530 | |
| U.S. Attorney General Bondi<br>U.S. Department of Justice<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530-0001 | |
| **and** | |
| **BETH REESE, in her individual capacity,**<br>Bureau of Prisons<br>Central Office HQ<br>320 First Street, NW<br>Washington, DC 20534 | |
| *Defendants*. | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

## INTRODUCTION

1. Priscilla Ellis, an honorably discharged United States veteran, spent over two years on the administrative unit at FMC Carswell facing near constant sexual violence by unit counselor, Officer Everett Cottrell, the unit counselor in charge of her. She suffered frequent sexual assaults and rapes, sexual harassment, verbal abuse, mental torment, and extreme isolation from her family and loved ones.

2. During these two years in the custody of the BOP and without any control over herself, Ms. Ellis was a "sex slave" entirely at Officer Cottrell's whim.

3. Due to failures throughout the chain of command of the BOP, especially at the Office of Internal Affairs which failed to adequately investigate Plaintiff's multiple reports of sexual assault and retaliation, sexual predators have been free to prey upon incarcerated women whose safety they were tasked to ensure, including Plaintiff's unit manager, Officer Cottrell, who was still employed by BOP until December 2024.

4. The BOP leadership, including Ms. Reese, have been aware of the culture of sexual abuse throughout the agency and specifically at FMC Carswell—where people in their care had been reporting sexual abuse by officers for years—and yet did nothing to meaningfully respond or otherwise protect the people incarcerated there.

5. As a direct result of these failures, Ms. Ellis was violently raped for over two years, despite trying to get the attention of other BOP staff, and then was retaliated against when she filed a report.

6. She continues to suffer retaliation from BOP staff through today.

7. Ms. Ellis now suffers from ongoing trauma because of the two years of sexual violence, mental torment, and retaliation, including insomnia, chronic nightmares, anxiety,

flashbacks, and depression. She remains in the custody of the BOP and fears continual assault by those responsible for her care.

8. Plaintiff brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, in connection with the deficient supervision and custodial care provided to her by various personnel, including Officer Cottrell, and the Officer of Internal Affairs, within the scope of their employment with the BOP. Plaintiff seeks redress for Defendants' unlawful conduct, which caused her to suffer permanent and catastrophic injuries.

## JURISDICTION AND VENUE

9. This action involves claims arising under United States and District of Columbia laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1346(b)(1), 1367, and 1343(a)(4),

10. Venue is proper in this district under 28 U.S.C. § 1391 because acts or omissions giving rise to the claims occurred in this district, and under 28 U.S.C. § 1391(3) because the individual Defendant is subject to this Court's personal jurisdiction.

## PARTIES

11. The Plaintiff, Ms. Ellis, was at all times relevant here incarcerated in BOP facilities, including FMC Carswell, located at 1200 Meandering Road, Fort Worth Texas 76144. She is currently incarcerated at FCI Waseca.

12. The Defendant United States of America ("United States") is liable for the tortious acts of its employees in accordance with the FTCA and is the appropriate Defendant for Plaintiff's claims under the FTCA. The United States is a sovereign entity that has waived immunity for certain claims, including the claims set forth herein, and is liable for

the acts or omissions of its agents, servants, contractors, and employees that occur with the scope of their employment.

13. The BOP is a component of Defendant United States's Department of Justice. The BOP operates and is in possession and control of the Federal Medical Center Carswell. FMC Carswell is a federal female medical correctional institution providing special medical and mental health needs.

14. At all times relevant hereto, Defendant United States acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FMC Carswell and responsible for the hiring, retention, training, supervision, management, discipline, and conduct of all BOP personnel, including, but not limited to, Officer Cottrell and Defendant Reese, and the operation of the Office of Internal Affairs which is supposed to investigate staff misconduct.

15. Defendant Beth Reese is Chief of the Office of Internal Affairs for the BOP.

16. She has held that role since May 2018.

17. Her duty station is in the Central Office in Washington, DC.

18. As chief of the Office of Internal Affairs, Ms. Reese is tasked with overseeing and properly responding to allegations of staff misconduct.

19. She has responsibilities for ensuring that investigations conducted by her office move forward and are completed in a timely manner.

20. These responsibilities include, but are not limited to, training and policy development regarding the office's handling of sexual misconduct allegations, reviewing retaliation allegations and determining whether to have a local investigator or someone from the

Central Office further review the matter, reviewing local allegations and referring it to the appropriate local OIG field office, and tracking and maintaining awareness of investigations handled by the OIG.[1]

21. While acting and failing to act as alleged herein, Defendants had complete custody and total control of Ms. Ellis.

22. Ms. Ellis was dependent upon Defendants for her personal security and necessities.

23. In performing the acts and omissions contained herein, Defendants, and each of its employees, acted under color of federal law, each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff. Each of them knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff and to her constitutionally, statutorily, and common law protected rights. Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure her rights to safety from sexual assault.

24. Defendants are liable for the tortious acts of its employees as well as the negligent failure to properly investigate. At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant. At all times relevant hereto, each Defendant, as well as Officer Cottrell, was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent. At all times relevant hereto, each Defendant was the authorized agent, partner, servant or contract of each other Defendant, and the acts

---

[1] Transcript of Evidentiary Hr'g at 25, 28, 37, 59, 61, *Cal. Coal. for Women Prisoners v. United States of America Fed. Bureau of Prisons*, (2024) (No. CV 23-04155-YGR).

and omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of the United States and Defendant Reese. Accordingly, each of them is jointly and severally liable to Plaintiff.

## A LONG-STANDING HISTORY OF SEXUAL ABUSE AT FMC CARSWELL AND THROUGHOUT THE BOP

25. Sexual abuse by correctional officers and other prison staff at BOP facilities in the United States has been documented for decades.

26. In 1999, Amnesty International published a report titled "*Not part of my sentence: Violations of the human rights of women in custody.*"

27. That Amnesty Report detailed:

> Many women in prisons and jails in the USA are victims of sexual abuse by staff, including sexually offensive language; male staff touching inmates' breasts and genitals when conducting searches; male staff watching inmates while they are naked; and rape.[2]

28. The Amnesty Report was widely circulated and read by responsible corrections professionals.

29. From 2014 to 2018, 35 women at the FMC Carswell reported sexual abuse from staff members. This number was the highest rate of reported sexual abuse of any federal women's prison, until recent news about FCI Dublin.

---

[2] Amnesty International, *Not part of my sentence: Violations of the human rights of women in custody,* available at https://www.amnesty.org/en/documents/amr51/001/1999/en/.

30. The Amnesty Report found that FMC Carswell "has been plagued with systemic sexual abuse for years," revealing hundreds of pages of incident reports, federal records, and court documents documenting a pattern of sexual misconduct and cover-ups.

31. The true number of assaults that occurred over this period at FMC Carswell is likely worse than records indicate because many prisoners don't report sexual assaults for fear of retaliation.

32. Since 1997, at least 12 correctional staff at FMC Carswell have been convicted of sexual abuse that occurred while at FMC Carswell.

33. Two lawsuits were filed by two women related to the 2021 repeated sexual assaults by recreation specialist Marerllis Nix, who was a known sexual predator.

34. FMC Carswell staff witnessed Nix take women to isolated areas of the prison, outside the view of cameras, but failed to intervene.[3]

35. In 2004, FMC Carswell officer Michael Lawrence Miller was found guilty of 5 counts of assault, abusive sexual contact with a ward, abusive sexual contact, sexual abuse of a ward, and aggravated sexual abuse.[4]

36. In 2008, an FMC Carswell chaplain was sentenced to four years in prison for sexually abusing women in his custody.[5]

---

[3] Megan Cardona, *Sexual abuse a 'severe problem' at Fort Worth's Carswell prison, attorneys for 2 women say*, KERA News, Mar. 11, 2024, https://www.keranews.org/criminal-justice/2024-03-11/fort-worth-carswell-sexual-abuse-federal-prison-2-victims.

[4] Michael Rigby, Sexual Predation Rampant at FMC-Carswell; Another Employee Convicted, Prison Legal News, May 15, 2007, https://www.prisonlegalnews.org/news/2007/may/15/sexual-predation-rampant-at-fmc-carswell-another-employee-convicted/.

[5] *Priest Who Sexually Abused Inmates at FMC Carswell in Fort Worth Sentenced to 4 Years in Federal Prison,* US DOJ OIG, May 5, 2008, https://oig.justice.gov/sites/default/files/2020-05/2008-05-05.pdf.

37. One prisoner reported abuses that occurred in 2011, 2012, 2015, 2017, and 2018. These abuses included rape committed by two federal officers, who also beat her unconscious and attacked her with a burning liquid after she reported the rape.[6]

38. From 2012 to 2021, the BOP Office of Internal Affairs substantiated at least 16 cases of BOP staff sexually abusing women incarcerated at FMC Carswell, almost all before Officer Cottrell raped Plaintiff.[7]

39. In 2016, BOP employee Matthew McGaugh began sexually abusing an incarcerated woman under his custody. She reported him, but faced constant retaliation. He was convicted in 2017.[8]

40. In 2021, Lieutenant Luis Curiel sexually abused three women. He was reported in June or July 2021 by another staff member, yet was allowed to remain working at FMC Carswell, where he continued sexually assaulting prisoners. He pled guilty to two counts of sexual abuse and admitted in the criminal prosecution that he had sexually abused three women under his custody at FMC Carswell.[9]

41. A BOP staff member who worked at FMC Carswell described the prison as "the perfect place for sexual misconduct," but remained anonymous for fear of retaliation. This same

---

[6] Kaley Johnson, *Pakistani prisoner beaten and sexually assaulted in Fort Worth federal prison, lawsuit says*, KERA NEWS, Sept. 25, 2024, https://www.keranews.org/criminal-justice/2024-09-25/aafia-siddiqui-carswell-pakistani-prisoner-sexual-assault-fort-worth-federal-prison-lawsuit.

[7] *Sexual Abuse of Female Inmates in Federal Prison*, United States Senate, Dec. 13, 2022, https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf

[8] *Former BOP Employee Sentenced for Engaging in Sexual Acts with Inmate*, USAO Press Release, Nov. 7, 2017, https://www.justice.gov/usao-ndtx/pr/former-bop-employee-sentenced-engaging-sexual-acts-inmate.

[9] *See United States v. Luise Curiel*, 4-22-cr-00132 (N.D.T.X) 2022.

officer had previously reported a lieutenant for exchanging drugs for sex, and was subsequently retaliated against and fired. [10]

42. In the PREA (Prison Rape Elimination Act) Audit Report at FMC Carswell conducted in the beginning of 2022, it was noted that in just the previous 12 months, 9 officers were referred for criminal prosecution for sexually assaulting a prisoner.[11]

43. Despite the audits, lawsuits, and criminal referrals, the abuse has continued and Defendants failed to take appropriate action to prevent future abuse, such as that experienced by Ms. Ellis, and continued to allow male staff to spend significant amount of time alone and unsupervised with incarcerated women at FMC Carswell.

44. The culture of sexual abuse whereby Defendants failed to investigate allegations of sexual abuse at FMC Carswell directly led to Ms. Ellis's abuse.

45. Sexual abuse by staff at BOP women's prisons has not been limited to FMC Carswell.

46. It occurs across BOP facilities across the country.

47. In 2007, five former corrections officers were convicted on criminal charges relating to the sexual abuse of female prisoners at FCI Tallahassee.

48. A 2021 lawsuit filed by four plaintiffs revealed sexual abuse by an FCI Tallahassee physician assistant.[12] Before this action, the same physician assistant was named in at least four civil suits alleging sexual abuse.[13] Another former officer at FCI Tallahassee

---

[10] *See*, supra, 4

[11] Robert Palmquist, Prison Rape Elimination Act Audit Report, Apr. 6, 2022, https://www.bop.gov/locations/institutions/crw/crw_prea.pdf.

[12] Compl. at 1, *Batchelor et al v. Rolston et al*, No. 4:21-cv-00232-AW-MAF (N.D. Fla. June 4, 2021).

[13] *Id*.

received a two-year prison sentence for the sexual abuse of a prisoner.[14] The victim in this case also filed a civil lawsuit, which named a second FCI Tallahassee guard accused of abuse, which, settled in 2022.[15]

49. In 2022, a different former corrections officer at FCI Tallahassee was sentenced to prison for four years for the sexual abuse of a prisoner while working at the facility. His indictment included charges related to multiple prisoners. [16]

50. In July 2022, a DOJ working group was tasked to address "reported and proven sexual misconduct by Federal Bureau of Prisons ("BOP") employees" by reviewing the DOJ's approach to monitoring and deterring employee sexual misconduct.[17]

51. The working group noted long-standing, pervasive problems throughout the BOP. This working group learned of long-standing insufficient reporting mechanisms, "flawed investigations," and examples of "inadequate administrative sanctions and initial

---

[14] Press Release, United States Attorney's Office for the Northern District of Florida, Former Bureau of Prisons Correctional Officer Sentenced to 24 Months in Federal Prison For Sexually Abusing Inmates (Aug. 27, 2021), https://www.justice.gov/usao-ndfl/pr/former-bureau-prisons-correctional-officer-sentenced-24-months-federal-prison-sexually.

[15] Silja Talvia, *Women Report 'Rampant' Sexual Abuse at Federal Prison Where Ghislaine Maxwell is Held,* THE APPEAL, Apr. 25, 2023, https://theappeal.org/fci-tallahassee-sexual-abuse-women-prison-ghislaine-maxwell/.

[16] Christopher Cann, *Former Tallahassee correctional officer sentenced to 4 years in prison for sexually abusing inmate*, TALLAHASSEE DEMOCRAT, Mar. 11, 2022, https://www.tallahassee.com/story/news/2022/03/11/former-tallahassee-correctional-officer-sentenced-4-years-prison-for-abusing-inmate-leon-county/6984207001/.

[17] The Principal Associate Deputy Attorney General Working Group of DOJ Components, *Report and Recommendations Concerning the Department of Justice's Response to Sexual Misconduct by Employees of the Federal Bureau of Prisons*, Nov. 2, 2022, https://www.justice.gov/d9/pages/attachments/2022/11/03/2022.11.02_bop_sexual_misconduct_working_group_report.pdf.

prosecutorial declinations for employees ultimately convicted of egregious misconduct."[18]

52.  The working group found that "advocates and formerly incarcerated women identified several obstacles to reporting sexual abuse, including a fear of not being believed, a fear of retaliation, and a fear that reporting would not result in consequences for the perpetrator."

53. The working group found that "formerly incarcerated individuals reported that corrections officers have threatened retaliation against reporting individuals, including by restricting access to children."

54. One particular problem it found was that, until the early 2020s, "SIS officers were encouraged during initial intake interviews to obtain from victims sworn declarations in writing under penalty of perjury, presumably for a later administrative investigation."

55. This practice was a problem because "There is no legal requirement for sworn statements or affidavits, and the evidentiary value of these sworn affidavits may be limited. At the same time, requiring such sworn statements run counter to trauma-informed practices and may chill reporting, as it heightens a victim's fear that she may face prosecution if her account is not believed."

56. Finally, the working group noted the problems created by blind spots in many women's prisons and suggested that the "BOP should continue to upgrade camera technology and implementation and, beginning with female institutions, review and expand coverage of currently deployed cameras across BOP systems to eliminate 'blind spots.'"[19]

---

[18] *Id.*

[19] *Id.*

57. The working group also issued elementary guidance regarding establishing an appropriate tone about sexual misconduct at BOP facilities: "The Director of BOP should issue a message reiterating the gravity of sexual misconduct and expressing that sexual misconduct will not be tolerated."[20]

58. The implication of this guidance given the ongoing and rampant abuse within BOP, is that this message had not been communicated to BOP staff.

59. An investigation by the Associated Press published in 2021 unfolded that over a hundred federal prison workers had been convicted or arrested for crimes since 2019, including a drug treatment specialist at Kentucky prison medical center who threatened prisoners' lives if they didn't comply with sexual abuse. [21]

60. The AP reporting also uncovered the Justice Department's failure to adhere to standard practice by not removing or suspending a prison official tasked with investigating staff misconduct, who was the subject of complaints and arrests himself.[22]

61. In October 2022, the DOJ Office of the Inspector General issued a report detailing its concerns over how the BOP had been handling of administrative misconduct investigations and prisoner statements relevant to those investigations. [23]

---

[20] *Id*.

[21] Michael Balsamo, *Workers at federal prisons are committing some of the crimes*, TORONTO STAR, Nov. 14, 2021, https://www.thestar.com/news/world/united-states/workers-at-federal-prisons-are-committing-some-of-the-crimes/article_e52cd284-d095-5caa-8e5f-90173c580ffd.html.

[22] *Id.*

[23] Michael E. Horowitz, *Management Advisory Memorandum: Notification of Concerns Regarding the Federal Bureau of Prisons' (BOP) Treatment of Inmate Statements in Investigations of Alleged Misconduct by BOP Employees*, Oct. 2022, https://oig.justice.gov/sites/default/files/reports/23-001.pdf.

62. The OIG specifically noted that "The BOP's reluctance to rely on evidence provided by inmates enhances the likelihood that employees who have engaged in misconduct avoid accountability for their actions and remain on staff, thereby posing serious insider threat potential, including the risk of serious harm to inmates." [24]

63. The OIG further noted that the BOP's procedures had historically created a problem because "to the extent that the BOP's reluctance to rely on inmate testimony is known to its employees, this reluctance likely emboldens miscreant staff members in their interactions with inmates because such staff members may act without fear of disciplinary consequences." [25]

64. The report explained that the "OIG has serious concerns that that the BOP is reluctant to rely on inmate testimony in administrative misconduct investigations, has a general practice of avoiding calling inmates as witnesses in MSPB and arbitration proceedings, and, at least in matters involving staff on inmate sexual assault, is effectively requiring significantly more proof than necessary under the applicable preponderance of the evidence standard to sustain misconduct and take disciplinary action against BOP employees." [26]

65. In sum "The OIG concluded that this manner of handling misconduct by BOP employees is contrary to federal regulations and BOP policy and creates significant risks for the BOP."[27]

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] Michael E. Horowitz, *Management Advisory Memorandum: Notification of Concerns Regarding the Federal Bureau of Prisons' (BOP) Treatment of Inmate Statements in*

66. Over the last two years, more history of sexual abuse in the BOP has surfaced.

67. A 2023 indictment involved the sexual abuse of two prisoners from 2018 through 2019 at Federal Correctional Institution Aliceville, perpetrated by a federal correctional officer.[28]

68. In 2022, a jury convicted a former prison warden at another federal facility afflicted by allegations of abuse, FCI Dublin, of sexually abusing three prisoners from 2019 through 2021 and of making false statements to a government agency in the investigation of criminal acts. Separate from the warden's own sexually abusive behavior, eight FCI Dublin correctional officers were charged with abusing prisoners during this warden's tenure.[29]

69. In 2024, a Special Master Report stemming from litigation surrounding sexual abuse at FCI Dublin unearthed a series of deficiencies at the California facility, some of which "are likely an indication of systemwide issues within the BOP, rather than simply within FCI-Dublin."[30]

70. Among the report's findings detailing the failures of the central BOP office including "the failure of Central Office and Regional Office management to correct significant and

---

*Investigations of Alleged Misconduct by BOP Employees*, Oct. 2022, https://oig.justice.gov/sites/default/files/reports/23-001.pdf.

[28] Press Release, U.S. Dept. of Justice, Office of the Inspector General, *BOP Correctional Officer Indicted for Sexual Abuse of Inmates*, Apr. 24, 2023, https://oig.justice.gov/news/press-release/bop-correctional-officer-indicted-sexual-abuse-inmates.

[29] *Press Release, Office of Public Affairs, U.S. Dept. of Justice, Former Federal Prison Warden Sentenced for Sexual Abuse of Three Female Inmates, Mar. 22, 2023,* https://www.justice.gov/opa/pr/former-federal-prison-warden-sentenced-sexual-abuse-three-female-inmates.

[30] Wendy Still, *First Report of the Special Master Pursuant to the Court's Order of March 26, 2024*, June 5, 2024, https://static1.squarespace.com/static/64a5d4d138199b2c7c48c3de/t/66d361045918c670b861f4af/1725128967464/FCI+Dublin%2C+Special+Master+Report+%28No+Attachments%29.pdf.

longstanding deficiencies that had previously been idenfied [sic] in multiple audits and investigations."[31]

71. The Special Master also found that "Furthermore, management's failure to ensure staff adhered to BOP policy put the health, safety and liberty of AICs [adults in custody] at great risk for many years."[32]

72. The Special Master noted that the BOP had understaffed and given low priority to Women and Special Populations Branch.[33]

73. The Special Master found that the "Female Offender Program Statement is outdated and does not reflect state-of-the-art knowledge on managing female AIC populations."[34]

74. The Special Master also reported that the BOP had "no standard protocol to report violations."[35]

75. The Special Master also found that the "BOP does not use PREA or other data to monitor reports of assault."[36]

76. In short, the long history of the Defendants' mismanagement created the conditions that led directly to Ms. Ellis being raped and sexually abused by a BOP staff member.

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

## BOP ALLOWED MS. ELLIS TO EXPERIENCE TWO YEARS OF SEXUAL VIOLENCE AT FMC CARSWELL

77. Ms. Ellis entered the BOP in February 2018.

78. In January 2019, Ms. Ellis was transferred to FMC Carswell.

79. She was housed in 2 North, a housing unit on the main compound of FMC Carswell.

80. On or around January 28, 2019, Ms. Ellis was told she could not be on the compound and was placed in the Special Housing Unit (SHU) also known as solitary confinement.

81. Ms. Ellis had not received any write-ups (disciplinary allegations) and was unsure why she was being placed in the SHU.

82. Ms. Ellis was housed in the SHU until the beginning of May.

83. During this time, Ms. Ellis first saw and met Officer Cottrell.

84. In the beginning of May, Officer Cottrell took Ms. Ellis out of SHU and brought her to the administrative unit.

85. This is the unit she remained in until she was transferred away from FMC Carswell at the end of 2021.

86. This was also the unit where Officer Cottrell was the unit manager.

87. The administrative unit at FMC Carswell is set up similarly to other units, but is the supermax for women at FMC Carswell.

88. Within the administrative unit, there were seven other women. Each woman had their own cell with a shower, toilet, locker, and bed. They could each come out of their cell at 6am until 9pm. There was a dayroom, beauty salon, workout room, conference room, visitation room, and the officers' office all devoted to the administrative unit.

89. The women housed within the administrative unit did not have any interactions with other prisoners on other units.

90. Just two days after her arrival on the administrative unit, on or around May 11, 2019, Officer Cottrell took Ms. Ellis out of her cell to make a five-minute phone call in the conference room.

91. After she made this call, Officer Cottrell approached her, kissed her mouth, fondled her breasts, and forced her to put her hands down his pants and manually masturbate him. This first interaction lasted roughly 10-15 minutes until Officer Cottrell heard the other officer on the unit calling for him.

92. During this interaction, Officer Cottrell told Ms. Ellis that as long as she cooperated with him, things would be easy for her.

93. Officer Cottrell also told Ms. Ellis that he was the only one who could help her.

94. Officer Cottrell threatened Ms. Ellis that she would experience retaliation, and her time in prison would be made even worse, if she ever were to try to report the abuse.

95. From this day until September 2021, while housed under Officer Cottrell, Ms. Ellis experienced relentless sexual abuse, rapes, sexual harassment, threats of harm and violence, mental torment, and extreme and intentional isolation from other prisoners and her loved ones on the outside.

96. The sexual assaults would all happen under similar circumstances: Officer Cottrell would take Ms. Ellis out of her cell either to make a phone call in his office or the adjoining conference room, or to take her to the unit beauty salon for her to do her hair.

97. There were no cameras in his office, the conference room, or the beauty salon.

98. Each time, Officer Cottrell would then force Ms. Ellis into some sexual act.

99. Over two years of forced sexual encounters, Officer Cottrell vaginally penetrated Ms. Ellis with his penis and finger, anally penetrated Ms. Ellis with his finger, and forced Ms. Ellis to perform oral sex and manually masturbate him.

100. These encounters were sporadic, sometimes once, twice, or three times a week, sometimes once a month.

101. Ms. Ellis believes she was forced to engage in some sort of sexual act more than forty times. That number is likely much higher.

102. Ms. Ellis never knew when she would be forced into some sexual act.

103. During these encounters, Officer Cottrell told Ms. Ellis that no one would ever believe her if she tried reporting him, and that he was the only person looking out for her.

104. Roughly six months after Officer Cottrell began sexually assaulting and raping Ms. Ellis, she reported the sexual assaults to Assistant Warden Cohen and Acting Warden Campos.

105. Both Cohen and Campos laughed at Ms. Ellis and otherwise ignored her cries for help.

106. Neither Cohen nor Campos undertook an investigation or report or caused an investigation or report to be commenced.

107. This lack of response from administration, further confirmed to Ms. Ellis that she was unprotected and would not be believed.

108. Even without having actual notice of sexual abuse, officers should have been able to see Officer Cottrell taking Ms. Ellis for extended periods of time, alone, to his office or other areas off-camera.

109.   This should have given officers constructive notice that inappropriate conduct was occurring. Yet no staff member made a report or investigation.

110.   Given the obviousness and frequency with which Officer Cottrell sexually abused and raped Ms. Ellis, other BOP personnel suspected, or should have reasonably suspected, that he was sexually abusing her.

111.   This lack of response from administration further demonstrated to Ms. Ellis that no one would help her.

112.   As a result of Ms. Ellis's placement in the administrative unit, Officer Cottrell had unfettered access to Ms. Ellis.

113.   September 22, 2021 was the last time Officer Cottrell raped Ms. Ellis. He called her to his office, as he had many times previously, vaginally penetrated her, and then brought her back to her cell.

114.   Several days later, Officer Cottrell told Ms. Ellis that she would be transferred.

115.   Binding PREA regulations mandate staff reporting, where all BOP staff are required to "report immediately . . . **any knowledge, suspicion, or information** regarding an incident of sexual abuse or sexual harassment that occurred in a facility. . .; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a) (emphasis added).

116.   When an incarcerated person is subject to a substantial risk of imminent sexual abuse, BOP shall take immediate action to protect that person. *See* 28 C.F.R. § 115.62.

117.     In addition, administrative investigations of alleged sexual abuse by a staff member are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a).

118.     The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *See id.* § 115.76(b).

119.     Victims shall also be offered medical and mental health care by the BOP. *See id.* § 115.83.

120.     Defendant United States and its agents, servants, contractors, and employees had numerous opportunities to follow those mandates and stop Officer Cottrell's misconduct. Officer Cottrell's actions, including treating her in her cell, were abnormal, obvious, and suspicious for sexual misconduct.

121.     In addition, upon information and belief, correctional officers in the control room were charged with monitoring the security cameras and following up on any suspicious activities that they noticed on the cameras.

122.     These officers saw or should have seen that Officer Cottrell frequently disappeared into unmonitored areas with prisoners who were not authorized to be in those areas alone with an officer.

123.     Even so, BOP personnel took no actions to investigate or stop this suspicious and recurrent behavior.

124.     Defendants and its agents, servants, contractors, and employees failed to investigate, discipline, supervise, monitor, question, or stop Officer Cottrell despite numerous indications of sexual misconduct including, upon information and belief, from by other incarcerated women.

125.    This violated mandatory BOP policies, was not related to a discretionary function or duty, and served no plausible penological policy purpose.

126.    Defendants and their agents, servants, contractors, and employees had actual and constructive notice that Officer Cottrell's office, the adjoining conference room, and the hair salon could each be used as a site of sexual abuse.

127.    That said, no BOP personnel came to investigate, intervene, or inquire as to Officer Cottrell's interactions with Ms. Ellis.

128.    This failure cannot be explained without deliberate indifference, recklessness, and carelessness of the Defendant United States and its agents, servants, contractors, and employees towards the risk of sexual abuse that incarcerated women face.

129.    Ms. Ellis was transferred to Federal Transfer Center (FTC) Oklahoma City in November 2021.

130.    Immediately upon arrival to the FTC, Ms. Ellis reported the sexual abuse and filed a PREA report.

131.    She was interviewed by psychology staff at the FTC.

132.    Psychology noted that Ms. Ellis was at risk of sexual victimization because of the sexual assault at FMC Carswell, but found that she was at Low Risk of Victimization at the FTC and failed to provide her with any further medical intervention.

133.    After these notes, a psychologist at FTC Oklahoma brought Ms. Ellis trauma books.

134.    She also saw a psychologist the following week.

135.    Ms. Ellis continued reaching out to Psychology requesting additional therapy appointments and treatment.

136.    Yet she received none.

137.    A week after speaking with Psychology, she also spoke with an SIA officer.

138.    But no one ever followed up with her.

139.    For over two years, Officer Cottrell treated Ms. Ellis as a "sex slave," a term she has used to identify the abuse that she experienced.

140.    Since leaving FMC Carswell, and at the facility she is currently incarcerated, officers will threaten her, intimidate her, and otherwise retaliate against her.

141.    During these encounters, they tell her that they know she had filed a PREA report against another BOP officer.

142.    Ms. Ellis has been thrown in the SHU and has otherwise been locked down for extended periods despite not receiving any write-ups or disciplinaries.

143.    Ms. Ellis's cell is searched more frequently than other prisoners.

144.    During these cell searches, officers regularly throw away her legal mail or disorganize her papers.

145.    She has lost an entire legal box of documents during these searches, and has had her commissary items thrown away as well.

146.    She has been fired from jobs suddenly with no warning or indications that she is not doing her job well and has been switched from her cells abruptly.

147.    Defendants' acts caused Plaintiff severe mental, physical, and emotional harm and exacerbated all of Plaintiff's already underlying mental health diagnoses.

148.    She has chronic insomnia and is only able to sleep for a few hours a night. When she finally does sleep, she finds herself awaking from horrible nightmares recounting the sexual violence she experienced.

149.    She has vivid memories of the sexual violence and can remember everything as if it had occurred the day before.

150.    Ms. Ellis entered prison with Post-Traumatic Stress Disorder (PTSD), from her time as an army veteran, and this violence has only exacerbated her symptoms of PTSD.

151.    The foregoing are permanent injuries as a direct result of Defendants' deliberate indifference to Plaintiff's health and safety, Defendants' disregard of the excessive risk of harm to Plaintiff's health and safety, and/or Defendants' negligent failure to promptly protect Plaintiff from foreseeable assaults. Plaintiff also suffers from other permanent injuries and deficits that will be established through expert consultation in this litigation.

152.    Upon information and belief, Plaintiff will require sustained, long-term intensive psychiatric and/or psychological treatment with appropriate qualified experts. Even with such professional treatment, it is expected that Plaintiff's injuries and damages are permanent and will continue to severely impact her health, welfare, and daily functioning.

**EXHAUSTION**

153.    Plaintiff has properly complied with 28 U.S.C. § 2675 by presenting an Administrative Claim against the United States of America. The Claim was timely filed within two years of the accrual of the causes of action. BOP denied Ms. Ellis's Administrative Claim on December 4, 2023.

154.    Plaintiff filed her pro se complaint in this Court on March 2, 2023, within 6 months of the denial of her Administrative Claim by the BOP.

155.    Therefore, Plaintiff exhausted requisite administrative remedies.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE UNDER FEDERAL TORT CLAIMS ACT
### (AGAINST DEFENDANT UNITED STATES OF AMERICA)

156.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth above.

157.    At all relevant times, Defendant United States, individually or through its agents, servants, contractors, and/or employees undertook and endeavored to, and did provide custodial care to people incarcerated at FMC Carswell including, but not limited to, the Plaintiff.

158.    At all relevant times, Defendant United States acted negligently in its indifference to Plaintiff's safety.

159.    At all relevant times, Defendant United States hired correctional and administrative employees at FMC Carswell, including Officer Cottrell, as well as colleagues and supervisors of Officer Cottrell whose identity are currently unknown to Plaintiff.

160.    At all relevant times, Defendant United States's employees were acting within the scope of their employment, in their official uniforms during work hours, performing work duties, when exercising custodial care, control, and supervision to Plaintiff.

161.    At all relevant times, FMC Carswell personnel held themselves out to incarcerated individuals as personnel with the ability and knowledge to carry out their duties, provide due care, and to act in accordance with standards of reasonable care common and acceptable in the community.

162.    At all relevant times and within the scope of their employment by Defendant United States, the above-named and unknown staff, while working within their official capacities at FMC Carswell, owed a duty to Plaintiff while she was at FMC Carswell.

163.    It is Defendant United States's duty to maintain, operate, and control FMC Carswell as a safe and secure space for persons in it, including, but not limited to, Plaintiff.

164.    In addition to a custodial duty owed to Plaintiff, Defendant United States of America was statutorily obligated under the Prison Rape Elimination Act and BOP policy to protect prisoners from foreseeable harm that included the sexual abuse suffered by Ms. Ellis.

165.    Defendant United States should have known that Officer Cottrell had a propensity to sexually abuse inmates, due to past rumors and disciplinaries received at FMC Carswell.

166.    Defendant United States should have known that Officer Cottrell acted inappropriately with prisoners under his care at FMC Carswell.

167.    Defendant United States was on notice of the possibility that prisoners would be sexually abused by corrections officers and other facility staff, through above-mentioned investigations, articles, lawsuits, and reports.

168.    As such, there was a foreseeable risk that correctional officers would sexually abuse Plaintiff and others under their control.

169.    Despite actual and constructive notice of Officer Cottrell's abuse, agents, servants, contractors, and/or employees of Defendant United States did not exercise reasonable

care or take reasonable available measures to abate the risk of sexual abuse to Plaintiff, and to ensure their safety, in violation of federal regulations and BOP protocols.

170. Despite actual and constructive notice of Officer Cottrell's abuse, Defendant United States failed to create and implement procedures, training, and supervision that would protect prisoners from the foreseeable risk of harm, including sexual abuse.

171. Despite actual and constructive notice of Officer Cottrell's abuse, Defendant United States knew of or should have known of the risk posed to Plaintiff and other prisoners that they would be sexually assaulted by employees such as Officer Cottrell.

172. Despite actual and constructive notice of Officer Cottrell's abuse, Defendant United States failed to maintain its facilities in a manner to deter the possibility of sexual abuse, including the above-mentioned lack of video cameras and the availability of unmonitored and isolated spaces in the facility for which male officers could be alone with female prisoners.

173. Due to Defendant United States's herein described acts and omissions, it breached its duty to protect Plaintiff and other prisoners from the reasonably foreseeable harm of sexual abuse by its employees, including Officer Cottrell.

174. Agents, servants, contractors, and/or employees of the United States did not possess the necessary skill to maintain safe and secure environment and protect Plaintiff from foreseeable harm.

175. Agents, servants, contractors, and/or employees of the United States neglected to apply the skill they did have.

176. Agents, servants, contractors, and/or employees of the United States did not use reasonable care in applying the skill they had.

177.    Agents, servants, contractors, and/or employees of the United States mistreated

Plaintiff and/or were negligent in other ways that are documented in the relevant records

and/or in ways of which Plaintiff are not yet aware.

178.    Plaintiff's injuries were inflicted solely through the carelessness, recklessness,

gross negligence, negligence, and deliberate indifference of Defendant United States and

its agents, servants, contractors, and/or employees, and through no fault or want of care

or contributory negligence on the part of Plaintiff.

179.    The failure of FMC Carswell personnel to prevent, investigate, or acknowledge

Officer Cottrell's sexual abuse, which lasted over two years, served no legitimate policy

purpose. On the contrary, FMC Carswell staff were required by mandatory BOP policies

and federal regulations to immediately intervene and investigate when they learned of his

suspected sexual abuse. Their failure to do so was patently outside of their discretionary

function.

180.    Plaintiff's injuries were direct and proximate consequences of Defendant United

States' (a) failure to enforce zero-tolerance policy against sexually abusive conduct, 28

C.F.R. § 115.11; (b) failure to supervise, monitor, and surveil one-on-one physical

contact between BOP personnel and incarcerated persons, 28 C.F.R. § 115.13;

(c) decision to hire, retain, and promote BOP personnel who was suspected or alleged to

have had improper sexual contact, 28 C.F.R. § 115.17; (d) punishment of victims through

disciplinary or retaliatory measures rather than providing proper support and protection,

28 C.F.R. § 115.43; (e) failure to report suspicion or allegation of sexual abuse, 28 C.F.R.

§ 115.61; (f) failure to protect victims from retaliation after reporting sexual abuse, 28

C.F.R. § 115.67; (g) failure to promptly, thoroughly, and objectively investigate all

allegations or reports, 28 C.F.R. § 115.71(a); and (h) failure to discipline staff for sexual misconduct, 28 C.F.R. § 115.76.

181.    Defendant United States's above-described acts and omissions were a direct and proximate cause of Plaintiff's injuries and damages herein.

**COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM UNDER FEDERAL TORT CLAIMS ACT**
**(AGAINST DEFENDANT UNITED STATES OF AMERICA)**

182.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth above.

183.    The above-described acts and omissions of FMC Carswell personnel, acting as an agent of Defendant United States, constituted extreme and outrageous conduct.

184.    Defendant United States, individually or through its agents, servants, contractors, and/or employees, directly caused or disregarded a substantial probability of causing severe emotional distress to Plaintiff.

185.    Defendant United States of America was negligent in its oversight and administration of FMC Carswell, which was a direct and proximate cause of Plaintiff's injuries.

186.    The acts and omissions of Defendant United States, described above, physically endangered Plaintiff and caused her injury through the sexual abuse she suffered for over two years, and caused debilitating emotional suffering. These acts and omissions constitute the tort of negligent infliction of emotional distress under the laws of the District of Columbia.

187. Under the FTCA, Defendant United States is liable for the acts and omissions of its agents, servants, contractors, and/or employees that occurred within the scope of their employment as here.

188. As a direct and proximate result of the foregoing, Plaintiff suffered debilitating psychological trauma, excruciating pain and suffering, emotional distress, permanent and catastrophic psychological injuries, permanent physical ailments associated with psychological injuries, humiliation, fear, depression, anxiety, frustration, loss of enjoyment and pleasures of life, loss of quality of life, and offenses to her personal dignity, as well as attendant damages, both general and special, including, but not limited to, any past and future medical expenses and economic injuries.

189. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered serious harm including, without limitation, physical, psychological, emotional, mental, financial, and reputational harm, and therefore, Plaintiff is entitled to recover damages in an amount to be determined at trial.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM UNDER FEDERAL TORT CLAIMS ACT (AGAINST DEFENDANT UNITED STATES OF AMERICA)

190. Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth above.

191. Defendant United States's acts and omissions herein and the acts and omissions of its agents, servants, contractors, and/or employees constituted extreme and outrageous conduct, which caused Ms. Ellis's severe emotional distress following sexual abuse she experienced for more than two years.

192.    Defendant United States, individually or through its agents, servants, contractors, and/or employees, intended to cause, or were recklessly indifferent to the probability of causing, Plaintiff severe emotional distress.

193.    Plaintiff, in fact, suffered debilitating emotional suffering. Her emotional distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

194.    Officer Cottrell engaged in extreme and outrageous conduct through violently raping Ms. Ellis for over two years while she was incarcerated and entirely under the care and control of Defendant United States. He intended to cause her severe emotional distress, or was recklessly indifferent to the probability of causing such distress, when he sexually abused her while he was supposed to be providing custodial care.

195.    At all relevant times, Officer Cottrell was acting within the scope of his employment at FMC Carswell, and used his authority as a member of the facility's correctional staff to sexually assault Plaintiff, while Plaintiff did not have the ability to consent or withhold consent.

196.    Plaintiff's injuries and damages were caused, in whole or in party, by intentional torts (*e.g.*, intentional infliction of emotional distress, gender violence, sexual assault, and battery) perpetrated by Officer Cottrell. Under 28 U.S.C. § 2680(h), Defendant United States is liable for the intentional torts committed by Officer Cottrell, and his abuse of his position of authority as a correctional officer and united manager, within the scope of his employment and under color of federal law.

197.    At all relevant times, Defendants United States individually or through its agents, servants, contractors, and/or employees including Officer Cottrell, were acting under

color of authority as "law enforcement officers" within the meaning of 28 U.S.C.

§ 2680(h). At all relevant times, Officer Cottrell supervised, disciplined, oversaw,

monitored, controlled, directed, ordered, restrained, and imprisoned Plaintiff within the

scope and course of his employment with Defendant United States. All BOP employees,

are charged with maintaining security of the institution and staffs' correctional

responsibilities precede all others required by this position and are performed on a regular

and recurring basis.

198.      At all relevant times, Defendant United States individually or through its agents,

servants, contractors, and/or employees including Officer Cottrell, used their authority as

law enforcement officers to direct, order, restrain, force, overpower, intimidate, threaten,

coerce, blackmail, harass, abuse, and assault Plaintiff and to prevent her from disclosing

the sexual assaults for fear of retaliation, victim-blaming or shaming, additional assaults,

among others.

199.      Defendant United States is vicariously liable for the intentional torts committed

upon the Plaintiff. Thus, Plaintiff brings this Claim for intentional infliction of emotional

distress under the FTCA against the United States, based on the conduct of its officers

including Officer Cottrell.

200.      As a result of FMC Carswell personnel's use and abuse of their positions of

authority as "law enforcement officers" within the course and scope of their employment,

and as a direct and proximate result of the foregoing, Plaintiff suffered debilitating

psychological trauma, excruciating pain and suffering, emotional distress, permanent and

catastrophic psychological injuries, permanent physical ailments associated with

psychological injuries, humiliation, fear, depression, anxiety, frustration, loss of

enjoyment and pleasures of life, loss of quality of life, and offenses to her personal dignity, as well as attendant damages, both general and special, including, but not limited to, any past and future medical expenses and economic injuries.

201.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered serious harm including, without limitation, physical, psychological, emotional, mental, financial, and reputational harm, and therefore, Plaintiff is entitled to recover damages in an amount to be determined at trial.

## COUNT IV – SEXUAL BATTERY UNDER FEDERAL TORT CLAIMS ACT
### (AGAINST DEFENDANT UNITED STATES OF AMERICA)

202.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth above.

203.    Officer Cottrell committed sexual battery on Ms. Ellis. It was impossible for Ms. Ellis to provide consent under 18 U.S.C. § 2243(b), which constitutes a felony when a BOP employee knowingly engages "in a sexual act with another person who is 1) in official detention; and (2) under the custodial, supervisory, or disciplinary authority of the person so engaging."

204.    Officer Cottrell acted within the scope of his authority and employment as a federal employee in the administrative unit at FMC Carswell.

205.    Ms. Ellis reasonably believed that Officer Cottrell was in a position of control or authority, and she did not have the ability to consent or not consent to sexual acts that he initiated.

206.    With the intent to cause harmful or offensive contact, Officer Cottrell subjected

Ms. Ellis to sexual acts to which she could not consent. These acts were deeply offensive

to her personal dignity and would offend a person of ordinary sensitivity.

207.    These above-described acts and omissions were a direct and proximate cause of

Plaintiff's serious physical and emotional harm.

208.    As a direct and proximate result of the foregoing, Plaintiff suffered debilitating

psychological trauma, excruciating pain and suffering, emotional distress, permanent and

catastrophic psychological injuries, permanent physical ailments associated with

psychological injuries, humiliation, fear, depression, anxiety, frustration, loss of

enjoyment and pleasures of life, loss of quality of life, and offenses to her personal

dignity, as well as attendant damages, both general and special, including, but not limited

to, any past and future medical expenses and economic injuries.

209.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered

serious harm including, without limitation, physical, psychological, emotional, mental,

financial, and reputational harm, and therefore, Plaintiff is entitled to recover damages in

an amount to be determined at trial.

210.    Defendant United States of America is liable for the intentional torts committed

Officer Cottrell, and his abuse of his position of authority as a correctional officer within

the scope of his employment.

## COUNT V – SEXUAL ASSAULT UNDER FEDERAL TORT CLAIMS ACT
### (AGAINST DEFENDANT UNITED STATES OF AMERICA)

211.    Plaintiff repeats and incorporates by reference every allegation contained in the

preceding paragraphs as if fully set forth above.

212.    Plaintiff brings this Claim under the FTCA for sexual assault against Defendant United States, based on the conduct of its officers including Officer Cottrell.

213.    Officer Cottrell subjected Ms. Ellis to sexual acts with the intent to cause harmful or offensive contact. His intentional torts caused Ms. Ellis's physical and emotional injuries, and Defendant United States is liable for intentional torts perpetrated by its agents within the scope of their employment.

214.    It was impossible for Ms. Ellis to provide consent under 18 U.S.C. § 2243(b), which constitutes a felony when a BOP employee knowingly engages "in a sexual act with another person who is 1) in official detention; and (2) under the custodial, supervisory, or disciplinary authority of the person so engaging."

215.    Officer Cottrell acted within the scope of his authority and employment as a federal employee in the medical unit at FMC Carswell.

216.    Ms. Ellis reasonably believed that Officer Cottrell was in a position of control or authority, and that she did not have the ability to consent or not consent to sexual acts that he initiated.

217.    As a direct and proximate result of the foregoing, Plaintiff suffered debilitating psychological trauma, excruciating pain and suffering, emotional distress, permanent and catastrophic psychological injuries, permanent physical ailments associated with psychological injuries, humiliation, fear, depression, anxiety, frustration, loss of enjoyment and pleasures of life, loss of quality of life, and offenses to her personal dignity, as well as attendant damages, both general and special, including, but not limited to, any past and future medical expenses and economic injuries.

218.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered serious harm including, without limitation, physical, psychological, emotional, mental, financial, and reputational harm, and therefore, Plaintiff is entitled to recover damages in an amount to be determined at trial.

219.    Defendant United States is liable for the intentional torts committed by Officer Cottrell, and his abuse of his position of authority as a correctional officer within the scope of his employment.

## COUNT IX – NEGLIGENT SUPERVISION UNDER FEDERAL TORT CLAIMS ACT
### (AGAINST DEFENDANT UNITED STATES OF AMERICA)

220.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth above.

221.    Defendant United States hired Officer Cottrell and other abusive employees, and allowed them to use their positions of power within the facility to exert influence over prisoners such as Ms. Ellis.

222.    Defendant United States knew that potential abusers such as Officer Cottrell would have the opportunity to be alone with female prisoners, particularly in secluded areas and areas without other facility personnel or video surveillance.

223.    Defendant United States failed to properly oversee and administer FMC Carswell, and failed to properly implement BOP and PREA policies that would have deterred sexual abuse such as that suffered by Ms. Ellis.

224.    Defendant United States had knowledge of the threat of future sexual abuse posed to prisoners as committed by facility staff, through the reports mentioned above and lawsuits.

225.     Defendant United States's knowledge of prior sexual abuse at FMC Carswell, as well as those specifically by Officer Cottrell, placed it on notice of employees' propensity to engage in sexually abusive behavior with prisoners such as Ms. Ellis.

226.     If Defendant United States had properly supervised employees, facility staff such as Officer Cottrell would not have been able to sexually abuse prisoners.

227.     If Defendant United States of America had conducted thorough investigations of reported employees, Officer Cottrell would not have been able to continue sexually abusing prisoners, including Ms. Ellis.

228.     Defendant United States was also negligent in allowing employees it knew previously committed sexual abuse to continue to safeguard and monitor a female population of prisoners.

229.     If Defendant United States of America had properly supervised and investigated employees such as Officer Cottrell and his supervisors, it would have learned of his propensity to commit sexual abuse.

230.     Defendant United States of AmericaTheabove-described acts and omissions were a direct and proximate cause of Plaintiff's serious physical and emotional harm.

**COUNT X - Trafficking Victims Protection Reauthorization Act ("TVPRA"),
18 U.S.C. § 1581, *et seq.*
(AGAINST DEFENDANT REESE)**

231.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth above.

232.     Congress passed the Trafficking Victims Protection Act and subsequent reauthorization acts ("TVPA") to combat domestic human trafficking.

233.    TVPA is a comprehensive statutory framework imposing both criminal and civil liability, *see* 18 U.S.C. § 1595, of persons engaging or attempting to engage or benefit from sexual exploitation and labor trafficking or obstructing anti-trafficking enforcement.

234.    The TVPA makes liable anyone who attempts to, conspires to, or actively "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . . benefits, financially or by receiving anything of value, from participation in a [trafficking] venture" while knowing "that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); 18 U.S.C. § 1594.

235.    "Coercion" means "threats of serious harm to or physical restraint against any person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person" or "the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2).

236.    "Serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(5).

237.    The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. 18 U.S.C. § 1591(e)(1).

238.     A commercial sex act is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

239.     Additionally, the TVPA punishes anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means.

    a.  by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

    b.  by means of serious harm or threats of serious harm to that person or another person;

    c.  by means of the abuse or threatened abuse of law or legal process; or

    d.  by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

240.     The TVPA makes liable anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d). 18 U.S.C. § 1589(b).

241.     The term "abuse or threatened abuse of law or legal process" in the forced labor provision means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was

not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

242.     The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(12).

243.     The TVPA also punishes anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section," 18 U.S.C. § 1591(d).

244.     The TVPA allows for civil liability as set forth in 18 U.S.C. § 1595(a).

245.     An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees. 18 U.S.C. § 1595(a).

246.     Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c). Officer Cottrell made Plaintiff engage in sex acts for over two years through force and coercion.

247.     Defendant Reese, as Chief of the Office of Internal Affairs, knew or should have known that Officer Cottrell had engaged in commercial sex acts with the Plaintiff in violation of the TVPA, and had a duty to protect prisoners, such as Ms. Ellis from reasonably foreseeable predators such as Officer Cottrell.

248.    By her acts and omissions in failing to meet these duties, Defendant Reese benefitted through continued employment.

249.    Defendant Reese participated in a venture and facilitated the harboring and transportation of Plaintiff for purposes of sex induced by force, fraud, or coercion.

250.    Defendant Reese benefitted financially through continuing employment and advancement when she, through her own actions and those she directed in her office, ignored the conditions that led to Officer Cottrell's persistent abuse, and otherwise benefitted from facilitating this behavior that kept him in his role on the facility's medical staff.

251.    This conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

## PRAYER FOR RELIEF

Ms. Ellis prays for judgment against Defendants, and each of them, as follows:

252.    An award of compensatory, punitive, and nominal damages to each named Plaintiff in an amount to be determined at trial;

253.    An award to Plaintiff of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

254.    For such other and further relief as this Court may deem just and proper.

Dated: May 16, 2025

        Respectfully submitted by,


*/s/ Deborah M. Golden*
Deborah M. Golden
DC Bar # 470-578

bex kolins
*DC Bar application Pending*
NC Bar # 58491

The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
202-630-0332
dgolden@debgoldenlaw.com