## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICTOF TEXAS

| | |
|---|---|
| **PRISCILLA ELLIS**, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, et al., <br><br> *Defendants.* | Civil Action No. 4:26-CV-00172-P |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................9

*Brownback v. King*,
  592 U.S. 209 (2021) ...............................................................................................8

*Buchanan v. Barr*,
  71 F.4th 1003 (D.C. Cir. 2023) ............................................................................10

*Farmer v. Brennan*,
  511 U.S. 825 (1994) .............................................................................................10

*Foye v. Montes*,
  9 S.W.3d 436 (Tex. App.—Houston [14th Dist.] 1999) .......................................11

*Hoffmann-La. Roche, Inc. v. Zeltwanger*,
  144 S.W.3d 438 (Tex. 2004) ...........................................................................13, 14

*Knight v. City Streets, L.L.C.*,
  167 S.W.3d 580 (Tex. App.—Houston [14th Dist.] 2005) ...................................12

*Montez v. Dep't of the Navy*,
  392 F.3d 147 (5th Cir. 2004) ..................................................................................9

*Price v. United States*,
  69 F.3d 46 (5th Cir. 1995) .......................................................................................9

*Salazar v. Collins*,
  255 S.W.3d 191 (Tex. App.—Waco 2008) ...........................................................12

*Simpson v. Cisneros*,
  129 F.4th 901 (5th Cir. Mar. 4, 2025) ..................................................................10

*Sonnier v. State Farm Mut. Auto. Ins. Colo.*,
  509 F.3d 673 (5th Cir. 2007) ..................................................................................9

**Statutes**

28 U.S.C. § 2679 .......................................................................................................10

Tex. Pen. Code, § 22.011 ...........................................................................................11

Tex. Pen. Code, § 39.04 .............................................................................................11

**Other**

28 C.F.R. § 115.61 ...................................................................................................................8

28 C.F.R. § 115.62 ...................................................................................................................8

28 C.F.R. § 115.76 ...................................................................................................................8

Rule 12(b)(6) ...........................................................................................................................9

## INTRODUCTION

Defendant Everett Cottrell violently sexually assaulted, raped, and mentally tormented Plaintiff Priscilla Ellis for nearly two years while she was housed in the administrative unit at FMC Carswell. Defendants Campos, Cohen, and Carr—all acting as either the wardens or the assistant wardens while Defendant Cottrell preyed on Plaintiff—had actual knowledge of this sexual abuse, or the sexual abuse was so obvious that any reasonable person in their position would have known of the sexual abuse. Yet none of these BOP supervisory defendants did anything to protect Plaintiff.

Under the Westfall Act, Plaintiff's intentional infliction of emotional distress, sexual assault, and negligent supervision against the individual defendants, Cottrell, Campos, Cohen, and Carr, are preserved because their purpose is to remedy the violation of her Eighth Amendment rights.[1]

## FACTUAL BACKGROUND

**I.    Defendant Cottrell sexually assaults Ms. Ellis for over two years and Defendants Campos, Cohen, and Carr ignore it.**

Ms. Ellis entered the BOP in February 2018 and was transferred to FMC Carswell in January 2019. Am. Compl. Dkt. 51-1 ¶¶ 89-90. Shortly after her arrival, Ms. Ellis was transferred to the Special Housing Unit (SHU), also known as solitary, despite not having any write-ups, and remained there until the beginning of May. *Id.* ¶¶ 92-94. Defendant Cottrell first saw Ms. Ellis when she was in the SHU. *Id.* ¶ 95. In early May, Defendant Cottrell took Ms. Ellis out of the SHU and placed her in administrative segregation, where she remained until she was transferred out of FMC Carswell at the end of 2021. *Id.* ¶¶ 96-97. The administrative

---

[1] *See* Plaintiff's contemporaneously filed Motion in Opposition to Defendants' Notice of Substitution.

segregation unit is the supermax unit for women at FMC Carswell and is the unit in which

Defendant Cottrell was the unit manager. *Id.* ¶¶ 98-99. This unit is set up similarly to the other

units, but was isolated from the rest of the compound and consisted of only seven other women.

Each woman had their own cell, and there was a separate day room, beauty salon, workout room,

conference room, and visitation room. *Id.* ¶ 99-101.

Two days after her arrival in this unit, Defendant Cottrell took Ms. Ellis out of her cell to

make a five-minute phone call in the conference room. *Id.* ¶ 102. After Ms. Ellis finished her

call, Defendant Cottrell approached her, kissed her, fondled her breasts, and forced Ms. Ellis to

manually masturbate him. *Id.* ¶103. Defendant Cottrell only stopped because another officer was

calling for him. *Id.* After this interaction, Defendant Cottrell told Ms. Ellis that as long as she

cooperated with him that things would be easy for her, and that her time in prison would be far

worse if she ever were to report him. *Id.* ¶¶ 104-06. From this day until September 2021, Ms.

Ellis experienced relentless sexual abuse, rape, sexual harassment, threats of harm and violence,

mental torment and intentional isolation from other prisoners and her loved ones on the outside.

*Id.* ¶107. The sexual assaults would happen under similar circumstances for these two years with

Defendant Cottrell taking Ms. Ellis to his office, the conference room, or beauty salon—places

that did not have surveillances cameras—and vaginally penetrating her with his penis and finger,

anally penetrating her with his finger, and forcing Ms. Ellis to perform oral sex and manually

masturbate him. *Id.* ¶¶ 108-11. These encounters were sporadic ranging from once a month to

three times a week and Ms. Ellis never knew when she would next be forced into some sexual

act. *Id.* ¶¶ 112, 114.

Roughly six months after Defendant Cottrell began sexually assaulting Ms. Ellis, she

reported the sexual abuse to Defendants Cohen and Campos. *Id.* ¶116. Both Defendants Cohen

and Campos laughed at Ms. Ellis, otherwise ignored her cries for help, and failed to open an investigation or file a report about this abuse. *Id.* ¶ 117-18. The lack of response, especially from administration, further confirmed what Defendant Cottrell had been telling Ms. Ellis all along—that no one would believe her or protect her. *Id.* ¶ 119. On September 22, 2021, nearly 2 and a half years after Defendant Cottrell began sexually abusing Ms. Ellis, he brought her into his office for the last time, vaginally penetrated her, and then brought her back to her cell. *Id.* ¶ 125. Ms. Ellis was transferred to Federal Transfer Center (FTC) Oklahoma in November 2021. *Id.* ¶ 142. Immediately upon leaving FMC Carswell and arriving to the FTC, Ms. Ellis reported the sexual abuse and filed a PREA report. *Id.* ¶ 143.

Since leaving FMC Carswell, Ms. Ellis has continued to experience ongoing retaliation and during many of these encounters, officers acknowledge knowing she filed a PREA report against another BOP officer. *Id.* ¶¶ 85-91. As a result of Defendant Cottrell's campaign of sexual abuse, Ms. Ellis has suffered severe mental, physical, and emotional harm including chronic insomnia where she finds herself awaking from horrible nightmares recounting the sexual violence she experienced, PTSD, flashbacks, severe anxiety, and depression. *Id.* ¶¶ 92-95.

## II.      Defendant Cottrell's Sexual Assault of Ms. Ellis Occurs within a Long History of Staff-on-Prisoner Sexual Abuse in the BOP and at FMC Carswell.

Sexual abuse by prison staff at BOP facilities within the United States is not new and has been documented and disseminated to staff, including Defendants, for decades. *Id.* ¶¶ 21-22. FMC Carswell's medical and mental health prisoners constitute a population especially vulnerable to sexual abuse. *Id.* ¶ 28. From 2012 to 2021, the BOP Office of Internal Affairs substantiated at least 16 cases of BOP staff sexually abusing women incarcerated at FMC Carswell, almost all before and during the time Defendant Cottrell was sexually abusing Ms. Ellis. *Id.* ¶ 36. A BOP staff member, who remained anonymous for fear of retaliation, described

FMC Carswell as "the perfect place for sexual misconduct." *Id.* ¶ 40. From 2014 to 2018, 35 women at FMC Carswell reported sexual abuse from staff members, the highest rate of reported sexual abuse of any federal women's prison outside of recent news of FCI Dublin. *Id.* ¶ 44. The true number of sexual assaults is likely higher since many prisoners don't report sexual assaults for fear of retaliation. *Id.* ¶ 45.

Despite the audits, lawsuits, and criminal referrals, the abuse has continued, and Defendants failed to take appropriate action to prevent future abuse, including allowing Defendant Cottrell to spend significant time alone and unmonitored with Ms. Ellis. *Id.* ¶ 48. The culture of abuse at FMC Carswell, perpetuated by Defendants, created the conditions that led directly to Ms. Ellis being raped and tortured for over two years. *Id.* ¶ 59. This mismanagement existed in the face of binding regulations, refuting any staff discretionary function or duty, requiring the contrary. *Id.* ¶ 60.

Even without actual notice of sexual abuse, which Defendants Cohen and Campos had, officers, including, and especially supervisory officers Defendants Cohen, Campos, and Carr, should have been able to see that Defendant Cottrell regularly took Ms. Ellis for extended periods of time, alone, to his office or other areas off-camera. *Id.* ¶ 120. The obviousness with which inappropriate sexual conduct was occurring should have given other officers and Defendant supervisory officers constructive notice that BOP policy and federal law was being violated. *Id.* ¶ 120-22. Binding PREA regulations mandate staff reporting, where all BOP staff are required to "report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility. . .; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of

responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a) (emphasis added); Am. Compl. ¶ 127.

Likewise, BOP is required to take immediate action to protect an incarcerated person who is subject to a substantial risk of imminent sexual abuse. *See* 28 C.F.R. § 115.62; Am. Compl. ¶ 128. According to policy, the presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *See id.* § 115.76(b). *See* Am. Compl. ¶ 130. Further, BOP Program Statement 3420.11 requires any employee to "report to their CEO (or other appropriate authority such as the [OIA] or [OIG]) any violation, appearance of a violation, or attempted violation of these standards or of any law, rule, or regulation." *See* Am. Compl. ¶ 62. According to the PREA Resource Center, because of the requirement to report suspicion of sexual abuse, rumors of sexual abuse amongst prisoners and staff should trigger the same mandate as above, requiring immediate reporting to the supervisory authority and investigation of the alleged perpetrator. *Id.* ¶ 63. Similarly, BOP Program Statement 5324.12 requires that "[a]llegations of sexually abusive behavior receive prompt intervention upon report." Am. Compl. ¶ 66.

Yet Defendants failed to follow any of these rules, policies, or mandates, thereby violating Ms. Ellis's Eighth Amendment right to be free from cruel and unusual punishment. Despite countless opportunities to investigate Defendant Cottrell's obvious inappropriate and violative conduct, coupled with the rumors around FMC Carswell that he had previously sexually abused prisoners, Defendants did not investigate, discipline, terminate, supervise, monitor, question, or stop Defendant Cottrell in any way. *Id.* ¶¶ 69-73.

## STANDARD OF REVIEW

"[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 217 (2021). As an attack on an FTCA element

constitutes an "intertwined" attack on both the merits and jurisdiction, a court weighing a jurisdictional challenge must apply the standards of Rules 12(b)(6) and resolve any uncertainties in the plaintiff's favor. *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Colo.*, 509 F.3d 673, 675 (5th Cir. 2007).

### ARGUMENT

I.  **Plaintiff concedes that she did not exhaust her administrative remedies pursuant to the FTCA requirements, but that her individual claims against Defendants Cottrell, Cohen, Campos, and Carr are preserved under the Westfall Act.**

Plaintiff acknowledges that she filed her complaint in March 2023, less than six months after the BOP received her administrative tort claim, and before she received a formal denial from the BOP. Def's App. at 2, 4, 9. As such, Plaintiff recognizes that the Fifth Circuit has held that an FTCA action cannot be instituted unless a Plaintiff has filed the administrative claim and either obtained a written denial or waited six months. *See Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995); Def's Mtn. to Dis. Dkt 56 at 10. However, the entirety of Ms. Ellis's claims does not fall under the FTCA. Since no FTCA claims remain, Plaintiff is not addressing Defendants' arguments regarding the discretionary function exception since they do not apply to the individual torts that remain. As addressed in Plaintiff's contemporaneously filed opposition to

Defendants' Notice of Substitution, three of Plaintiff's claims against Defendants Cottrell, Cohen, Campos, and Carr are preserved under the Westfall Act. *See* Opp to Def's Not. Of Subst.

In short, the Westfall Act preserves causes of action against individual employees of the government "(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized" 28 U.S.C. § 2679(b)(2). Put differently, an action exists outside the FTCA where there is a state common-law claim whose "purpose is to remedy a constitutional violation." *Buchanan v. Barr*, 71 F.4th 1003, 1016 (D.C. Cir. 2023) (Walker, J., concurring).

Ms. Ellis brought this case to remedy the sexual assaults she suffered in federal custody and which violated her right to be free from cruel and unusual punishment. The individual Texas state-law claims—intentional infliction of emotional distress (Count III), sexual assault (Count VII), and negligent supervision (Count VIII) against the individual defendants—remedy Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment. Courts have long held that sexual abuse and harassment triggers Eighth Amendment protections. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Simpson v. Cisneros*, 129 F.4th 901 (5th Cir. Mar. 4, 2025). These state-law claims, thus, fall squarely within the exception enumerated in the Westfall Act, 28 U.S.C. § 2679(b)(2).  As such, these three claims are preserved since the exhaustion requirement under the FTCA does not bar these claims, and this Court should deny Defendants' Motion to Dismiss as it relates to Counts III, VII, and VIII.

**II.    Plaintiff sufficiently pled her sexual assault, negligent supervision, and IIED claims**

**A.  Sexual assault is a Texas intentional tort claim.**

Ms. Ellis has sufficiently pled the elements for sexual assault against Defendant Cotrell. To satisfy an intentional tort of sexual assault, a plaintiff must show that a person "1) intentionally or knowingly; 2) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent." *Nelson v. Cauley*, 2005 U.S. Dist. LX 49941 at *8-9 (N.D. Tex. Feb. 22, 2005) (citing Tex. Pen. Code § 22.011 (2025)). While these are the elements of criminal sexual assault, Texas courts have held that the definition of sexual assault is the same whether the claim is civil or criminal. *See Nelson*, 2005 U.S. Dist. LX 49941 at *9; *see also Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App.—Houston [14th Dist.] 1999) (Tex. App.—Houston [14th Dist.] 1999, pet) (finding that the elements of criminal and civil assault are the same).

Defendant Cottrell sexually assaulted Ms. Ellis for over two years while she was under his custody at FMC Carswell. Ms. Ellis has alleged that Defendant Cottrell forced his penis and fingers inside her vagina and anus and forced her to perform oral sex on him so many times over the course of the two and a half years that she fails to know the number of occurrences. Simply put, however, Ms. Ellis has sufficiently pled that Defendant Cottrell intentionally and knowingly penetrated Ms. Ellis. Additionally, during these sexual assaults, Ms. Ellis never consented, nor, as a prisoner, could she consent. *See* Tex. Pen. Code § 39.04 (2024) (making it a federal crime for an officer to engage in sexual contact or sexual intercourse with an individual in their custody, regardless of "consent"). Since Ms. Ellis has alleged that Defendant Cottrell knowingly and intentionally penetrated her without her consent, she has sufficiently pled the elements of sexual assault. As a result, this Court should deny Defendants' motion insofar as it relates to Ms. Ellis's claim against Defendant Cottrell for sexual assault.

**B. Negligent Supervision is a Texas intentional tort claim.**

Ms. Ellis has sufficiently pled the elements of negligent supervision against Defendants Campos, Cohen, and Carr. To prevail on a negligent supervision claim, Ms. Ellis needs to prove 1) Defendants owed her a legal duty to supervise its employees; 2) Defendants breached that duty; and 3) that breach proximately caused her injuries. *See Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005) (citing *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002)). Additionally, to recover on a negligent supervision claim, the plaintiff must prove that the employer was negligent in hiring or retaining the employee, but also that the employee committed an actionable tort against the plaintiff. *Latimer v. Mem'l Hermann Hosp. Sys.*, NO. 14-09-00925-CV, 2011 Tex. App. LX 423, at *10 (Jan. 20, 2011))

Defendants Cohen, Campos, and Carr, as the wardens and assistant wardens owed Ms. Ellis a duty to supervise their employees. Texas courts have held that a special relationship exists between prisoners and officers such that the officers owe a duty of reasonable care to protect prisoners from harm when that harm is reasonably foreseeable. *See Castro v. Geo Grp., Inc.*, No. DR-20-CV-033-AM-VRG, 2021 U.S. Dist. LX 256383, at *19-20 (W.D. Tex. Mar. 15, 2021); *see also Salazar v. Collins*, 255 S.W.3d 191, 198 (Tex. App.—Waco 2008) (holding that a 'special relationship" exists between inmates and the Texas Department of Criminal Justice, who owe a duty of reasonable care to protect inmates from harm when that harm is reasonably foreseeable). Because of the longstanding history of sexual abuse within the BOP, and especially within FMC Carswell—knowledge that Defendants Cohen, Campos, and Carr possessed—there was a reasonably foreseeable risk of sexual assault that Ms. Ellis faced as a prisoner at FMC Carswell. Likewise, each of these defendants had the authority to fire, reprimand, terminate, or

otherwise discipline employees under their supervision, yet failed to in regards to Defendant Cottrell.

Defendants Cohen, Campos, and Carr breached their duty to protect Ms. Ellis when they knowingly disregarded the risk of harm Ms. Ellis faced—Defendants Cohen and Campos disregarding an actual knowledge of harm, and Defendant Carr disregarding harm that a reasonable officer in his position would not have ignored. Lastly, Ms. Ellis has pled facts sufficient to show that the breach of Defendants Cohen, Campos, and Carr's duty to protect Ms. Ellis from sexual assault was the proximate cause of her injuries; had Defendants properly supervised, disciplined, or intervened at all, Ms. Ellis would not have experienced the sexual violence she experienced. Lastly, Defendant Cottrell committed sexual assault, an actionable tort, against Ms. Ellis.

As such, Ms. Ellis has sufficiently pled the elements of negligent supervision against Defendants Cohen, Campos, and Carr. So, this court should deny Defendants' motion to dismiss insofar as it relates to Ms. Ellis's claim of negligent supervision.

### C. Ms. Ellis has stated a claim for IIED if this Court finds that she has not sufficiently pled sexual assault and negligent supervision.

Plaintiff understands that IIED in Texas courts is used as a "gap-filler" tort. *Hoffmann-La. Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Under the Supreme Court, IIED can be used "for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress" *Id.* (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Ms. Ellis has pled facts sufficient to show that Defendants inflicted severe emotional distress. Defendant Cottrell sexually assaulted, raped, and tormented Ms. Ellis for over two years. He was able to do so both because he had entirely

isolated Ms. Ellis in the administrative housing unit, the unit in which he was the unit officer, and also because supervisory Defendants knew what he was doing but refused to discipline him. Additionally, Ms. Ellis has suffered severe mental anguish as a result of this sexual violence, including constant flashbacks, nightmares, insomnia, anxiety, and depression. Ms. Ellis has sufficiently pled the elements necessary to satisfy a claim of IIED.

If this Court dismisses Plaintiff's two remaining claims—sexual assault and negligent supervision—this Court should retain her IIED claim as it would "supplement … [her] recovery by providing a cause of action for egregious conduct that might otherwise go unremedied" *Id.* at 447 (cleaned up).

## CONCLUSION

Plaintiff concedes that her FTCA claims against Defendant USA fail because of her failure to fully exhaust her administrative claim pursuant to the requirements of the FTCA. However, her three claims against Defendants Cottrell, Campos, Cohen, and Carr are preserved under the Westfall Act since the purpose of her complaint is to remedy the violation of her constitutional rights. This court must accept Ms. Ellis' facts and view them in the light most favorable to her. Since Ms. Ellis pled her sexual assault, negligent supervision, and IIED claims sufficient to survive a 12(b)(6) motion, and because Defendant USA is not able to substitute itself for these three claims, this Court should deny Defendants' motion to dismiss as it relates to Ms. Ellis's sexual assault, negligent supervision, and IIED claims.


Respectfully submitted July 6, 2026


/s/bex kolins
bex kolins NC Bar # 58941
bkolins@debgoldenlaw.com

Deborah M. Golden
DC Bar # 470-578
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
202-630-0332
dgolden@debgoldenlaw.com


/s/James P. Roberts
JAMES P. ROBERTS
State Bar No. 24105721
SCOTT H. PALMER
State Bar No. 0079196

15455 Dallas Parkway, Suite 540
Addison, Texas 75001
214-987-5100
james@palmerperlstein.com
scott@palmerperstein.com

**ATTORNEYS FOR PLAINTIFF**